UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| CAROLANN ROEMEN, | ) | CIV. 09-4145-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | AND ORDER |
| | ) | |
| FEDERATED MUTUAL INSURANCE | ) | |
| COMPANY, an insurance company, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Carolann Roemen, filed suit against defendant, Federated Mutual Insurance Company, in the Circuit Court, Second Judicial Circuit, Minnehaha County, South Dakota, asserting that Federated wrongfully refused to pay her medical bills. Roemen sought compensatory and punitive damages under South Dakota law for her claims of breach of the duty of good faith and fair dealing, breach of fiduciary duty, breach of contract, and unreasonable and vexatious refusal to pay. Federated removed the action to this court pursuant to 28 U.S.C. §§ 1441 and 1446.

## BACKGROUND

Roemen is the wife of an employee who works at Roemen's Auto Supply. She obtained health insurance coverage as a dependent on her husband's group health insurance policy, which was issued by Federated to Roemen's Auto Supply. Roemen underwent surgery in August 2007, and Federated denied her claims relating to this procedure. Roemen then brought suit against

Federated. After removing this case to federal court, Federated moved for summary judgment, arguing that ERISA preempted Roemen's state-law claims. The court denied Federated's motion for summary judgment because there was a material issue of fact as to the role Roemen's Auto Supply had in the funding of the group health insurance policy and which documents governed the group health insurance policy. The court scheduled an evidentiary hearing for November 9, 2010, in order to determine whether Roemen's claims are governed by and therefore preempted by ERISA.

During the hearing, Federated introduced into evidence a Group Health Insurance Certificate of Coverage identifying the effective date as February 1, 2008, the employer as Roemen's Auto Supply, the policy number as 5672, and the policyholder as Roemen's Auto Supply. Docket 8-2 at 6. The Group Health Insurance Certificate of Coverage states that the policy was delivered in South Dakota and is governed by South Dakota law. Docket 8-2 at 6. Federated introduced a Summary Plan Description: Company Employee Security Benefits Plan (Summary Plan Description), which stated that Roemen's Auto Supply was the sponsor of the plan and the plan administrator and that the insurer was Federated. Docket 8-2 at 7. The Summary Plan Description also contained information about eligibility for participation in the plan, enrollment, and rights and protections under ERISA. Docket 8-2 at 8-9.

Roemen introduced into evidence a document entitled Group Health Policy, which states that the policy holder was Federated Health Choice Group Insurance Trust, the effective date was October 1, 2003, the policy anniversary was January of each year, the policy number was 5672, and the policy was delivered in Iowa and governed by Iowa laws. Docket 16-1 at 2. Roemen asserts that this document relates to the group health insurance policy in effect at the time she filed her claims.

During the evidentiary hearing on whether the group health policy was an ERISA plan, Federated explained that many of the documents submitted into evidence were essentially re-creations of the group health policy. Docket 34 at 40-41. Some of the re-created documents contain incorrect or false information. Docket 34 at 40-41. Roemen presented expert testimony about ERISA's requirements from Joe Dobbs. Dobbs testified about how the group health insurance policy failed, in several respects, to comply with ERISA's requirements.

## FINDINGS OF FACT

After considering the evidence presented at the hearing, the court finds by a preponderance of the evidence the following facts to be true:

The group health insurance policy was an intended benefit by Roemen's Auto Supply for its employees. The employees, and their dependents, were in the class of beneficiaries covered by the group health insurance policy.

Roemen's Auto Supply was a substantial source of financing for the group health insurance policy. The procedures for receiving the benefits were set out in the materials provided to Roemen's Auto Supply by Federated.[1]

## DISCUSSION

Whether or not an insurance policy is governed by ERISA and therefore subject to ERISA preemption is a mixed question of law and fact. *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 256 (8th Cir. 1994) (citations omitted). "Where federal subject matter jurisdiction is based on ERISA, but the evidence fails to establish the existence of an ERISA plan, the claim must be dismissed for lack of subject matter jurisdiction." *Id.* at 256 (citations omitted). The removing party bears the burden of demonstrating by a preponderance of the evidence that federal jurisdiction exists. *Altimore v. Mount Mercy Coll.*, 420 F.3d 763, 768 (8th Cir. 2005) ("Because Mount Mercy removed this case to federal court, it bears the burden of establishing jurisdiction by a preponderance of the evidence." (citation omitted)).

Federated asserts that the group health insurance policy at issue in this case is part of an employee welfare benefit plan within the meaning of ERISA and that ERISA preemption applies as a matter of law. Roemen argues that the

---

[1] The court does not decide when the group health insurance policy at issue went into effect because that issue has no bearing on whether the policy is a plan for purposes of ERISA preemption.

group health insurance policy is not an ERISA plan because it does not comply with ERISA's requirements.

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries by regulating the creation and administration of employee benefit plans." *Kuhl v. Lincoln Nat'l Health Plan of Kansas City, Inc.*, 999 F.2d 298, 301 (8th Cir. 1993) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987)). At issue in this case is whether ERISA preempts the state-law claims asserted in the complaint. "Consistent with the decision to create a comprehensive, uniform federal scheme for regulation of employee benefit plans, Congress drafted ERISA's preemption clause in broad terms." *Id.* ERISA's preemption clause provides that, subject to certain limited exceptions, the provisions of ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

In order to determine whether Roemen's state-law claims are preempted by ERISA, the court must first determine if the group health insurance policy at issue in this case is a "plan" within the meaning of ERISA. *See Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 628 (8th Cir. 2001) ("As a preliminary matter, we must determine if the disability insurance policy at issue was a 'plan' within the meaning of ERISA because the existence of a 'plan' is a prerequisite to the jurisdiction of ERISA."). Under ERISA, a " 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan

5

which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). "Employee welfare benefit plan," in turn, is defined as "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing its participants or their beneficiaries . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1). As recognized by the First Circuit Court of Appeals, "[t]he text of ERISA itself affords scant guidance as to what constitutes a covered 'plan' " because it "merely constructs a tautology, defining an employee benefit plan as 'any plan, program or fund' established or maintained by an employer that provides certain benefits to employees." *Belanger v. Wyman-Gordon Co.*, 71 F.3d 451, 454 (1st Cir. 1995).

Nonetheless, there is guidance for determining whether the group health insurance policy at issue constitutes an ERISA plan. "To qualify as a 'plan, fund, or program' under ERISA, a reasonable person must be able to ascertain the intended benefits, a class of beneficiaries, source of financing, and procedures for receiving benefits." *Nw. Airlines, Inc. v. Fed. Ins. Co.*, 32 F.3d 349, 354 (8th Cir. 1994) (internal quotation omitted). Further, the plan must require the "establishment of a separate, ongoing administrative scheme to administer the plan's benefits." *Kulinski*, 21 F.3d at 257.

Roemen has failed to respond to Federated's arguments about whether the group health insurance policy is a "plan" within the meaning of ERISA. After considering the evidence introduced during the hearing, the court finds that the group health insurance policy is part of an "employee welfare benefit plan" that was "maintained" by Roemen's Auto Supply. The "intended benefits" was health insurance; the "class of beneficiaries" included Roemen's Auto Supply's employees and their dependents; the "source of financing" was a combination of payments from Roemen's Auto Supply and the employees;[2] and the "procedure for receiving benefits" was set out in the materials provided to Roemen's Auto Supply. *See Nw. Airlines*, 32 F.3d at 354.

As to the "establishment of a separate, ongoing administrative scheme to administer the plan's benefits," the decision in *Robinson v. Linomaz*, 58 F.3d 365 (8th Cir. 1995), demonstrates that "there is no requirement that the employer play any role in the administration of the plan in order for it to be deemed an [employee welfare benefit plan] under ERISA." *Id.* at 368. Rather, "an employer's purchase of an insurance policy to provide health care benefits for its employees can constitute an [employee welfare benefit plan] for ERISA purposes." *Id.* And there is no dispute that Roemen's Auto Supply, the employer, paid at least half of the insurance premiums for the group health

---

[2] While there is a dispute as to the exact amount paid by Roemen's Auto Supply, there is no dispute that Roemen's Auto Supply paid at least 50 percent of the premiums for the group health insurance policy. Docket 34 at 76.

insurance policy that provided health insurance coverage for its employees and their dependents. Docket 34 at 76. Thus, a "separate ongoing administrative scheme" was established by Roemen's Auto Supply when it purchased the group health insurance policy for its employees. The group health insurance policy is therefore a "plan" within the meaning of ERISA.

Initially it appeared that the safe harbor provision established by the Department of Labor, pursuant to 29 U.S.C. § 1135, might apply in this case. The safe harbor regulation provides,

> [T]he term[] "employee welfare benefit plan" . . . shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation in the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). The evidentiary hearing established, however, that the first requirement cannot be satisfied because Roemen's Auto Supply contributed to the group insurance program by paying at least 50 percent of the premiums. Docket 34 at 76. Thus, the safe harbor provision set forth in 29 C.F.R. § 2510.3-1(j) does not apply. *See Dam v. Life Ins. Co. of N. Am.*, 2006 WL 3436576, at \*1 (8th Cir. 2006) (per curiam) (unpublished opinion) ("[W]e conclude the evidence presented by the parties established beyond genuine dispute that [the] employer contributed to the insurance program under which [plaintiff] sought the benefits, and thus the district court did not err in determining that the benefits at issue did not fall within the safe harbor provision." (citations omitted)).

Roemen argues that the group health insurance policy cannot be a "plan" for ERISA purposes because it does not comply with ERISA's requirements. Roemen has not identified any authority supporting the proposition that failure to comply with ERISA's requirements has any role in determining whether a group health insurance policy is an ERISA plan. The courts that have addressed this argument have rejected it. *See, e.g., Antolik v. Saks Inc.*, 278 F. Supp. 2d 997, 1002 (S.D. Iowa 2003) ("Although [the defendant] violated ERISA's disclosure requirements by failing to provide Plaintiffs with a summary plan description, this has no bearing on whether [the defendant] established a plan in the first place."); *Garred v. Gen. Am. Life Ins. Co.*, 723 F. Supp. 1325,

9

1328 (W.D. Ark. 1989) ("[The court] need not decide whether [plaintiff's employer] complied with ERISA, but whether the insurance policy at issue falls under the purview of ERISA."); *Comprehensive Care Corp. v. Doughtry*, 682 F. Supp. 516, 517 (S.D. Fla. 1988) ("The court must decide not whether Aetna complied with ERISA, but whether the insurance policy falls under the purview of ERISA."). Thus, even if the policy does not comply with all ERISA statutory requirements, the court finds that the group health insurance policy constitutes a "plan" that is governed by ERISA as dictated by the controlling law on ERISA preemption. *See generally Robinson*, 58 F.3d at 368; *Kulinski*, 21 F.3d at 257; *Nw. Airlines*, 32 F.3d at 354.

      Roemen also argues that Federated should be estopped from arguing that the group health insurance policy is governed by ERISA because the documents provided by Federated and the policy itself do not comply with ERISA. In support of her argument, Roemen identifies one opinion where a court expressed its frustration with ERISA's preemptive effect and the apparent lack of appropriate remedies. *See Andrews-Clarke v. Travelers Ins. Co.*, 984 F. Supp. 49, 54 (D. Mass. 1997) ("This case, thus, becomes yet another illustration of the glaring need for Congress to amend ERISA to account for the changing realities of the modern health care system." (citing cases)). Roemen does not, however, identify a case where a court actually estopped a defendant from asserting an ERISA preemption defense in light of the plan's failure to

comply with ERISA's requirements. In fact, the only opinion cited by Roemen actually undermines Roemen's argument. *See id.* at 54-55 ("All of [the plaintiff's] cognizable state law causes of action arise out of the alleged improper processing of [the] claims for benefits under an ERISA employee benefit plan, and are therefore preempted."). Other courts that have addressed similar arguments have also refused to prevent a defendant from asserting an ERISA preemption defense.

For example, in *Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320 (2d Cir. 1985) *aff'd sub nom.* 477 U.S. 901 (1986), the plaintiffs argued "that since [the defendant] benefitted from its failure to comply with [ERISA's] requirements, it should be estopped from relying on the Act to avoid its contractual and state law obligations." *Id.* at 328. The Second Circuit Court of Appeals recognized that "[a] serious risk of unfairness may exist when an employer that has never sought to comply with ERISA wants to use the Act's broad preemption provision to avoid potential liability to its employees under state law." *Id.* It nonetheless refused to estop the defendants from raising an ERISA preemption defense. *Id.* at 328-29. Rather, the court held that the appropriate response was to review the denial of benefits "in the context of the employer's failure to comply with ERISA's requirements" with the understanding that "in some circumstances[,] noncompliance with procedural requirements will 'work a substantive harm' [to the employee]." *Id.* (citation omitted).

The court agrees with the reasoning and outcome in *Gilbert*. This approach "adequately protects the rights of employees with respect to the . . . benefits, and best effectuates Congress's aim to promote the uniform administration of employee benefits." *Id.* at 329. Moreover, "[i]t both eliminates any incentive on the part of employers not to comply with the Act's reporting, disclosure and fiduciary requirements, and avoids inconsistent treatment of claims under state law." *Id.* Thus, the court rejects Roemen's argument that Federated is estopped from asserting an ERISA preemption defense. *See id. See also Holcomb v. Pilot Life Ins. Co.*, 754 F. Supp. 524, 529 (N.D. Miss. 1991) (holding, for the same reasons, that the defendants were "not estopped from asserting ERISA preemption as a defense even though they may not be in total compliance with the Act"); *Bourg v. NN Investors Life Ins. Co.*, 1991 WL 211568, at *3 n.2 (E.D. La. October 2, 1991) ("The alleged failure of the plan to meet certain content and description requirements of ERISA does not exclude the plan from the scope of ERISA's coverage, nor does it preclude defendants from asserting ERISA peremption [sic] as a defense to plaintiffs' claim[.]").

Accordingly, the group health insurance policy constitutes part of an employee welfare benefit plan that is governed by ERISA. And "a claim to recover benefits or enforce rights under the terms of an ERISA plan" is completely preempted. *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 907 (8th Cir. 2005) (internal quotations and citation omitted).

Therefore, the state-law claim for breach of contract is preempted under 29 U.S.C. § 1132(a)(1)(B).

Roemen also alleges a claim for bad faith. "In *Pilot Life*, the Supreme Court held that ERISA preempts state common-law causes of action arising from the alleged improper processing of a claim for benefits under an ERISA-regulated plan." *Kuhl*, 999 F.2d at 302 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57 (1987)). Roemen's bad faith claim is therefore preempted under 29 U.S.C. § 1144(a) because it relates to an employee benefit plan. *See id.* (discussing the preemptive effect of 29 U.S.C. § 1144(a)).

Finally, Roemen alleges a claim under SDCL 58-12-3, which authorizes an award of attorney's fees "if it appears from the evidence that [the insurance] company . . . has refused to pay the full amount of [a] loss, and that such refusal is vexatious or without reasonable cause[.]" As noted by the Eighth Circuit Court of Appeals, "[t]here can be no doubt after *Pilot Life* that a state vexatious refusal to pay claim is preempted by ERISA where it relates to an employee benefit plan." *In re Life Ins. Co. of North Am.*, 857 F.2d 1190, 1194 (8th Cir. 1988) (discussing "the preemptive effect of [29 U.S.C.] § 1144(a)"). Thus, Roemen's claim under SDCL 58-12-3 is also preempted under 29 U.S.C. § 1144(a) because it relates to an employee benefit plan. *See id.* at 1194-95 (citing cases). It is

ORDERED that Roemen's breach of contract claim will be construed by the court to be a claim to recover benefits due that is governed by the Employee Retirement Security Act under 29 U.S.C. § 1132(a)(1)(B) and attorney's fees under 29 U.S.C. § 1132(g).

IT IS FURTHER ORDERED that Roemen's state-law claims are dismissed.

Dated April 1, 2011.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE